**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2125**

BRILLIANT SEMENOVA,

Plaintiff - Appellant,

v.

MARYLAND TRANSIT ADMINISTRATION,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:14-cv-03413-JFM)

Argued: December 8, 2016                    Decided: January 10, 2017

Before TRAXLER, FLOYD, and THACKER, Circuit Judges.

Reversed and remanded by published opinion. Judge Thacker wrote the opinion, in which Judge Floyd joined. Judge Traxler wrote a dissenting opinion.

**ARGUED:** Joel Robert Zuckerman, MAXWELL BARKE & ZUCKERMAN LLC, Rockville, Maryland, for Appellant. Julie Theresa Sweeney, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** James S. Maxwell, MAXWELL BARKE & ZUCKERMAN LLC, Rockville, Maryland, for Appellant. Brian E. Frosh, Attorney General, Jennifer L. Katz, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

THACKER, Circuit Judge:

Brilliant Semenova ("Appellant") sued the Maryland Transit Administration ("Appellee") pursuant to the Americans with Disabilities Act ("ADA"), alleging disability discrimination in its provision of public services. The ADA does not include a statute of limitations, so the district court applied the two-year statute of limitations from Maryland's Anti-Discrimination Law (the "Maryland Law") and dismissed the suit as untimely. But because the Maryland Law does not contain a cause of action for disability discrimination in the provision of public services, the closer state-law analog to Appellant's claim is a general civil action, which is subject to a three-year statute of limitations. Applying this more analogous statute of limitations, we reverse and remand because the complaint here alleges discrimination occurring within three years of its filing.

I.

On October 30, 2014, Appellant filed a complaint in the United States District Court for the District of Maryland alleging Appellee violated Title II of the ADA in operating its commuter bus service.[1] Appellant alleges that although she

---

[1] Title II applies to public entities, including state and local governments and their instrumentalities, see 42 U.S.C. § 12131(1), and prohibits disability discrimination in the
(Continued)

suffers from cerebral palsy and uses a walker or crutches, "[o]n numerous occasions, beginning in or about October, 2011 . . . and continuing through 2012," bus operators refused to use an assistance lift or otherwise assist her in boarding the bus. J.A. 7.[2]  Because she relied on the bus to attend classes at the Community College of Baltimore County, Appellant alleges, this discrimination forced her withdrawal from school "in the summer of 2012."  Id. at 8.

Appellee moved to dismiss on timeliness grounds, arguing that because the ADA does not provide a statute of limitations, ADA claims brought in Maryland are subject to the two-year statute of limitations found in the Maryland Law; and the last alleged discriminatory act was over two years before Appellant filed her complaint.  Appellant responded that her complaint was timely because Maryland's three-year statute of limitations for general civil actions applies to her claim.

In response, the district court issued a one-page memo, containing only one paragraph explaining why it sided with Appellee, and dismissed Appellant's complaint.  Without further

---

provision of public transportation services, see § 12132; 49 C.F.R. § 37.5.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

illumination, the district court acknowledged that the Maryland Law "does not expressly apply to disability claims related to public accommodations" but nevertheless concluded, "the Fourth Circuit would find the two year limitations period [contained in the Maryland Law] to be the one that should" apply to Appellant's claim. J.A. 36. In a separate order without further reasoning, the district court dismissed the complaint as untimely. This appeal followed.

## II.

We review de novo dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), assuming as true the complaint's factual allegations and construing "all reasonable inferences" in favor of the plaintiff. Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 702 (4th Cir. 2016) (internal quotation marks omitted). A court may grant a 12(b)(6) motion on statute of limitations grounds only "if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).

## III.

Because Title II of the ADA does not contain a statute of limitations, federal courts "borrow the state statute of limitations that applies to the most analogous state-law claim." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011). Although "the most analogous statute need not be

4

identical," state legislation containing a statute of limitations will only control if it provides substantially "the same rights and remedies" as the ADA. Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 224–25 (4th Cir. 1993). In A Society Without A Name v. Virginia, for example, we considered the applicable limitations period for ADA claims brought in Virginia. See 655 F.3d at 347–48. We held that the one-year statute of limitations in the Virginia Rights of Persons with Disabilities Act applies, given the state law's express pronouncement that regulations promulgated pursuant to the statute "shall be consistent, whenever applicable," with the ADA. Id. at 348 (quoting Va. Code. Ann. § 51.5–40).

Given the substantially similar language between the ADA and the Rehabilitation Act, see A Soc'y Without A Name, 655 F.3d at 347, we have applied the same analysis to determine the applicable statute of limitations for Rehabilitation Act claims. Thus, in Wolsky v. Medical College of Hampton Roads, we held that the statute of limitations in the Virginia Rights of Persons with Disabilities Act also applies to Rehabilitation Act claims brought in Virginia, instead of the more general statute of limitations for personal injury claims. See 1 F.3d at 225. We deemed the Virginia law an "exact state law counterpart" to the Rehabilitation Act because it tracks the language of the federal law, requires regulations promulgated pursuant to state

5

law to be consistent with the federal law, and affords the same remedies as the federal law. Id. at 224–25.

Similarly, in McCulloch v. Branch Banking & Trust Co., we held that the 180-day statute of limitations in the North Carolina Handicapped Persons Protection Act applies to Rehabilitation Act claims brought in that state. See 35 F.3d 127, 132 (4th Cir. 1994). In so holding, we relied in part on the statute's prohibition of the same type of discrimination alleged in the underlying complaint. See id. at 130.

Critically, however, the Maryland Law does not provide Appellant "the same rights and remedies" as the ADA because it does not provide a cause of action for disability discrimination in the provision of public services. Wolsky, 1 F.3d at 224. Rather, the closer state-law analog to such an ADA claim is Maryland's more general statute of limitations, requiring plaintiffs to file civil actions "within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code Ann., Cts. & Jud. Proc. § 5-101; see A Soc'y Without A Name, 655 F.3d at 347.

In A Society Without A Name, Wolsky, and McCulloch, we applied state statutes of limitations to federal claims, at least in part, because the relevant state laws also allowed claims for the same type of discrimination the plaintiffs alleged pursuant to federal law. See N.C. Gen. Stat. Ann.

6

§§ 168A-5(a) (prohibiting disability employment discrimination), -11 (creating "civil action to enforce rights granted or protected by this chapter"); Va. Code. Ann. §§ 51.5-40, (prohibiting disability discrimination in programs receiving state funding), -46 (creating cause of action to enforce "the rights set forth in this chapter"). In stark contrast to the broad enforcement mechanisms these statutes include, the Maryland Law only recognizes causes of action in limited circumstances. See, e.g., Md. Code Ann., State Gov't § 20-1035 (creating cause of action for disability housing discrimination); § 20-1013 (creating cause of action for disability employment discrimination). And although the Maryland Law allows claims based on local anti-discrimination laws in Howard, Montgomery, and Prince George's Counties, which prohibit discrimination in public accommodations, see § 20-1202; Md., Howard Cty. Code § 12.210; Md., Montgomery Cty. Code, §§ 27-10, -11; Md., Prince George's Cty. Code §§ 2-186, 2-220, we are not tasked with finding the closest local analog to federal law, but the closest state analog. See A Soc'y Without A Name, 655 F.3d at 347.

Further, the holding below was an outlier in the District of Maryland, which has held time and again that ADA claims are subject to Maryland's three-year statute of limitations governing general civil actions. See, e.g., Innes

7

v. Bd. of Regents of Univ. Sys. of Md., 29 F. Supp. 3d 566, 572 (D. Md. 2014); Schalk v. Associated Anesthesiology Practice, 316 F. Supp. 2d 244, 251 (D. Md. 2004); Ross v. Bd. of Educ. of Prince George's Cty., 195 F. Supp. 2d 730, 735 n.2 (D. Md. 2002); Speciner v. NationsBank, N.A., 215 F. Supp. 2d 622, 634 (D. Md. 2002); Kohler v. Shenasky, 914 F. Supp. 1206, 1211 (D. Md. 1995). Although the District of Maryland decided most of these cases before recent amendments to the Maryland Law that created a cause of action for disability employment discrimination, see H.B. 54, 2009 Leg., 426th Sess. (Md. 2009) (codified as amended at Md. Code Ann., State Gov't § 20-1035), and expanded protections for persons with disabilities or records of disability, see H.B. 393, 2009 Leg., 426th Leg., (Md. 2009) (codified as amended at §§ 20-601, -603, -606), those amendments did nothing to modify the rights and remedies of a plaintiff in Appellant's shoes who alleges discrimination in the provision of public services.

Thus, we hold that Appellant's claim is subject to a three-year statute of limitations. We need not decide whether the complaint alleges discrimination occurring as Appellant argues, "through [the end of] 2012," or, as Appellee argues, no later than the summer of 2012 when Appellant withdrew from school. Because Appellant filed her complaint on October 30, 2014, either date would fall within the three-year filing

8

period.  The district court thus erred by dismissing Appellant's claim as untimely.

IV.

For the foregoing reasons, we reverse the district court's dismissal and remand for further proceedings.

<u>REVERSED AND REMANDED</u>

TRAXLER, Circuit Judge:

I respectfully dissent. In my view the district court correctly applied a two-year limitations period to Semenova's ADA claim, and I would affirm the district court's dismissal of her complaint.

Because Title II of the ADA[1] does not contain a statute of limitations, courts "borrow the state statute of limitations that applies to the most analogous state-law claim." A Society Without a Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011). The reason courts adopt the statute governing the most analogous state-law cause of action is critical. The tradition "is based on a congressional decision to defer to 'the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action.'" Hardin v. Straub, 490 U.S. 536, 538 (1989) (quoting Wilson v. Garcia, 471 U.S. 261, 271 (1985)).

In my view, the Maryland legislature has expressed its judgment in very clear terms on the proper balance to be struck. Maryland statutory law provides private causes of action for many types of discrimination – including disability

---

[1] See Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12165.

discrimination.  In each case, the legislature has provided that the statute of limitations is two years.  Indeed, claims made under several such Maryland statutes are closely analogous to Title II claims.  See, e.g., Md. Code, State Gov't §§ 20-705 – 20-707, 20-1035 (housing discrimination); Md. Code, State Gov't §§ 20-606, 20-1009, 20-1013 (employment discrimination).  Most analogous, in my view, however, are claims under § 20-1202 of Maryland's State Government Code.  That statute provides for private causes of action "for damages, injunctive relief, or other civil relief" for violations of the anti-discrimination laws of Howard, Montgomery, and Prince George's Counties, each of which prohibit discrimination – including disability discrimination – in places of public accommodation, see Howard Cty. Code § 12.210; Mont. Cty. Code §§ 27-10, 27-11; Prince George's Cty. Code §§ 2-186, 2-220.  The decision of the Maryland legislature that a two-year statute of limitations applies to such state-law actions leaves no doubt concerning what balance the Maryland legislature would strike regarding the appropriate limitations period for Title II actions.[2]

---

[2]     At oral argument, Semenova maintained that a cause of action under § 20-1202 could not possibly be the most analogous state-law cause of action because a § 20-1202 action must be based on the violation of county discrimination law.  But it is hard to understand Semenova's point.  Section 20-1202 is a Maryland statute creating a Maryland cause of action aimed at providing redress for victims of disability discrimination that
(Continued)

Semenova has not identified any difference between § 20-1202 claims and Title II claims that that would give us any reason to doubt that the Maryland legislature's judgment regarding the proper limitations period for § 20-1202 claims would apply just as well to Title II actions. Indeed, Semenova's only argument that § 20-1202 is not the most analogous cause of action is that the facts alleged in her complaint would not state a claim under § 20-1202, because the discrimination she alleged did not occur in one of the three counties to which § 20-1202 applies.[3] But this argument misunderstands the role that § 20-1202 plays in our analysis. The similarity of a § 20-1202 cause of action to one brought under Title II matters because of what it reveals about the Maryland legislature's judgment concerning the balance it favored regarding considerations of repose; it has nothing to do

would not otherwise be available. See Edwards Sys. Tech. v. Corbin, 841 A.2d 845, 857-58 (Md. 2004) (regarding statutory predecessor to § 20-1202). And it was the Maryland state legislature that decided that a two-year limitations period would apply to such actions. See Md. Code, State Gov't § 20-1202(c)(1).

[3] Maryland statutory law prohibits public-accommodations disability discrimination throughout the state, see Md. Code, State Gov't § 20-304, but does not provide for a private right of action for violation of this statewide ban.

with the question of whether Semenova herself could have brought a § 20-1202 claim.

Furthermore, regarding the determination of the appropriate limitations period, it is unlikely Congress would have sanctioned a construction of the ADA under which the length of the statute of limitations would depend upon "an analysis of the particular facts of each claim," as such an approach would "inevitably breed[] uncertainty and time-consuming litigation." Wilson, 471 U.S. at 272; see id. at 272-75. Rather, "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored" a less fact-specific approach. Id. at 275.

Semenova argues that despite the obvious close similarities between Title II claims and those made under § 20-1202, the three-year statute governing general civil actions, § 5-101 of the Maryland Courts and Judicial Proceedings Code, actually provides a closer analogue. But we rejected a very similar argument in McCullough v. Branch Banking & Trust Co., 35 F.3d 127 (4th Cir. 1994). In that case, the plaintiff brought suit against his employer claiming that he was terminated because of his handicap in violation of § 504 of the Rehabilitation Act. See McCullough, 35 F.3d at 128. Like the ADA, the Rehabilitation Act provides no statute of limitations; thus, we were required to decide which state limitations period applied.

13

See id. at 129. The employer favored the 180-day period applicable to claims under the North Carolina Handicapped Persons Protection Act (the "North Carolina Act"). See id. The plaintiff, on the other hand, preferred the three-year period generally applicable to wrongful-discharge actions. See id. at 131.

We agreed with the employer. See id. at 130-32. In so doing, we acknowledged that, for several reasons, the North Carolina Act was by no means a perfect analogue: (1) the North Carolina Act provides for a bench trial while the Rehabilitation allows for jury trials; (2) while the Rehabilitation Act allows for full compensatory and punitive damages, the North Carolina Act allows only injunctive relief and back pay; (3) the Rehabilitation Act, unlike the North Carolina Act, does not extend or base coverage upon receipt of state assistance; and (4) the Rehabilitation Act, unlike the North Carolina Act, does not require the employee to notify the employer of his or her disability and to make accommodation suggestions and cooperate in evaluating possible accommodations. See id. at 131.

Nevertheless, we rejected the plaintiff's argument that these distinctions kept the North Carolina Act from being the most closely analogous, explaining:

> [Plaintiff's identification of the distinctions between the Rehabilitation Act and the North Carolina Act] begs the question of which North Carolina statute

14

is <u>most</u> analogous to the Rehabilitation Act. The differences between the North Carolina Act and the Rehabilitation Act identified by McCullough do not, by themselves, magically tip the balance of similarities so as to make the general wrongful discharge provision more analogous to the Rehabilitation Act than the specific provisions of the North Carolina Act. It simply means that, in North Carolina, there is no perfect counterpart to the Rehabilitation Act, and we must determine which statute is more appropriate.

<u>Id.</u> at 132 (emphasis added). In the end, we held that, despite the differences the plaintiff had identified, the North Carolina Act was a better fit than the general wrongful-discharge statute because the North Carolina Act and the Rehabilitation Act both "redress discrimination against the same very specific group of persons," whereas "the general wrongful discharge statute protects against a wide range of discrimination which, although including persons with disabilities, also encompasses many other classes of individuals." <u>Id.</u>; <u>see also</u> <u>Wolsky v. Medical Coll. Of Hampton Roads</u>, 1 F.3d 222, 225 (4th Cir. 1993) ("[The Supreme Court] acknowledged that minor differences between state and federal statutes are acceptable and the most analogous statute need not be identical.").

Similar reasons dictate that § 20-1202 claims are the closest analogue to claims brought under Title II.[4] It seems

---

[4]    We have borrowed statutes of limitation from state-law anti-discrimination statutes in other cases brought under the ADA and Rehabilitation Act. <u>See</u> <u>A Society Without a Name v. Virginia</u>, 655 F.3d 342, 348 (4th Cir. 2011) (holding one-year
(Continued)

fairly plain to me that a statute creating a private right of action for illegal discrimination is a closer fit than a catch-all statute governing all sorts of civil actions. And, the difference Semenova identifies between causes of action under § 20-1202 and those under Title II of the ADA – that § 20-1202 applies in only certain subdivisions of the relevant jurisdiction – is much less significant from the standpoint of applying the Maryland legislature's limitations-period judgment than were the differences we considered in McCullough. Notwithstanding the fact that § 20-1202 applies only to three counties, the critical fact remains that victims of discrimination in those counties have a state-law cause of action under § 20-1202 that closely resembles a Title II claim, and the Maryland legislature has decided that a two-year limitations period applies to such actions. I believe that is the legislative judgment that should control here.

---

limitations period set forth in Virginia Rights of Persons with Disabilities Act applies to Title II claims brought in Virginia); Wolsky v. Medical Coll. Of Hampton Roads, 1 F.3d 222, 224-25 (4th Cir. 1993) (holding same limitations period applies to Rehabilitation Act claims brought in Virginia).

For all of the foregoing reasons, I respectfully dissent.[5]

---

[5] I would conclude, for the reasons explained in McCullough, that the two-year statute of limitations is consistent with the federal policies underlying the ADA. See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994). And I agree with the district court's conclusion that Semenova's action is time-barred, assuming that a two-year limitations period applies.